FLECKENSTEIN BROTHERS COMPANY, PLAINTIFF IN ERROR, v. GEORGE FLECKENSTEIN, DEFENDANT IN ERROR.

Argued June 30, 1908—Decided November 19, 1908.

1. *Query.* Does a contract for the sale of an existing business, which contains a provision restraining the vendor from entering into a competing business not only within the .territory within which it is then being carried on, but also within territory into which both parties may reasonably anticipate the vendee will be able to, and will, in fact, extend it, impose an unreasonable restraint upon trade?

2. If such a contract be valid it would seem that the question whether the area which it embraces is greater than is required for the full protection of the vendee, is ordinarily one for the determination of the jury rather than the court, when an action at law is brought for its breach.

3. The vendor of a business, the principal part of which was carried on in Jersey City, covenanted with his vendee that he would not engage in a competing business "within five hundred miles from the city of Jersey City at any time within a period of twenty years." *Held*, that although taken literally, this language does not include the territory of Jersey City within the protected area, nevertheless, by the true construction of the covenant, that territory is a part of the area from which the vendor has excluded himself, and that it should be read as binding the vendor not to engage in business "either in the city of Jersey City, or within five hundred miles from that city." *Held further*, that the covenant, so read, describes a divisible area, and that, if the restraint contracted for, so far as it embraces territory outside of Jersey City, is unreasonable, and, to that extent, invalid, still, in respect to Jersey City, it was clearly necessary for the protection of the business as it existed at the time of the sale, and, to that extent, is capable of enforcement.

On error to the Supreme Court.

For the plaintiff in error, *Gilbert Collins* and *Albert I. Drayton.*

For the defendant in error, *James A. Gordon.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   The plaintiff in this case, Fleckenstein Brothers Company, was incorporated in 1901 with a capital of $40,000 for the purpose of manufacturing bologna and other pork products, curing hams and bacon and selling these articles both at wholesale and retail.   Its principal places of business were located in Jersey City, but its product was sold not only there, but also in other places in Hudson, Essex, Union and Passaic counties, in New York City, and places adjacent thereto, and, to a limited extent, in Pennsylvania.   Its business was almost immediately a profitable one.   The defendant, George Fleckenstein, was its manager and owned a controlling interest in its stock.   On October 6th, 1902, he sold out his holdings of stock to one Niederlitz and others who were associated with him, thus giving them the control of the corporation.   The consideration for the sale was over $24,000, and for this payment, in addition to the transfer of his stock, the defendant entered into the following agreement with the corporation: "Jersey City, N. J., October 6th, 1902.   For the sum of one dollar to me paid (receipt of which is hereby acknowledged) by Fleckenstein Brothers Company of Jersey City, N. J., I do hereby guarantee and agree to and with said company that I will not directly or indirectly engage in, promote or give my name to any business of the same kind or character as that now carried on by said company within five hundred miles from the city of Jersey City, N. J., at any time within the period of twenty years from the date hereof.   George Fleckenstein. Witness, Henry Niederlitz."   In less than five months after the making of this agreement the defendant became interested in a competing business established in Jersey City under the name of R. E. Fleckenstein & Company, and this suit was brought to recover the damages resulting to the company from the breach of his contract.   The trial of the cause resulted in a nonsuit, the court below being of opinion that the contract was one which imposed an unreasonable restraint upon trade, and was, therefore, invalid; that it was indivisible and therefore not enforceable, even within the territory of

Jersey City. The correctness of this ruling is now challenged by the plaintiff.

The contract in question is one which is in partial restraint of trade. It is, therefore, under all the cases, not objectionable to public policy unless it goes further than is reasonably required for the protection and enjoyment of the business sold, or unless the restraint is so great as to interfere with the interests of the public. And it may be added that the trend of opinion of the present day is that such a contract is not injurious to the public interests, so long as the area within which the business is restrained is no greater than is covered by the business whose good will has been sold. 1 *Page Cont.,* § 378, and cases cited. Whether a contract which extends the area of restraint beyond the territory within which the business is being carried on at the time of its sale imposes an unreasonable restraint upon trade is a question upon which courts differ. The preponderance of view seems to be that it does. Nevertheless, there is much force in the contention that a person who purchases the good will of a business, with the purpose of extending its scope, is entitled to bargain with his vendor against competition within the territory into which he designs to extend it, and that such a contract is not opposed to public policy when the area which it embraces is not greater than that which the parties may fairly anticipate the extended business will cover. "It is of public interest that the owner of a business who desires to sell it shall be able to get a fair price for it, and that his purchaser shall be able to obtain by his purchase that which he desires to buy. Obviously the only practical mode of accomplishing that purpose is by the vendor's contracting for some restraint upon his acts preventing him from engaging in the same business in competition with that which he has sold." *Trenton Potteries Co. v. Oliphant,* 13 *Dick. Ch. Rep.* 514. And just as obviously the value of the good will is enhanced by affording to the vendee protection against competition from the vendor within the territory into which both parties understand the vendee proposes to, and may reasonably expect to be able to, extend the business.

If a contract having the scope suggested does not impose an unreasonable restraint upon trade, it would seem that the question whether the area which was embraced in a given contract was greater than was required for the full protection of the vendee must ordinarily be one of fact to be determined by the jury, rather than the court, when an action at law is brought for its breach. As was pointed out in the Trenton Potteries case, *supra*, in the days when orders and responses had to be transmitted by mail and the mail was carried by stage coach and goods were transported by pack or wagon, the area of the trade of a manufacturer or tradesman was necessarily limited by these conditions. Now that orders and responses may be transmitted over hundreds of miles by telegraph and telephone and quick transit may be had for goods either by express or freight, competition has assumed altogether different proportions, and what would have been at one time merely a burden upon the vendor may now be essential to the reasonable protection of the vendee.

The case in hand, however, does not require a determination of the question whether or not such a contract as that indicated imposes an unreasonable restraint upon trade. By the terms of the agreement sued upon the defendant promised not to engage in a competing business "within five hundred miles from the city of Jersey City." Taken literally this language does not include the city of Jersey City within the area of protection, and yet, when it is remembered that the principal business of the corporation was carried on in that city, it cannot be doubted that both parties intended by the words used to include it in the territory within which the defendant agreed not to carry on a competing business. So construed, the contract may fairly be read as binding the defendant not to engage in a business of the character conducted by the corporation "either in the city of Jersey City or within five hundred miles from that city." Reading it thus the description of the area within which the contract restrains the defendant is a divisible one, embracing not one whole area, but two areas disjunctively described. Assuming that the restraint contracted for, so far as it embraces territory outside of Jersey

City, is unreasonable, and that the contract is, to that extent, invalid, nevertheless, in respect to Jersey City, it was clearly necessary for the protection of the business as it existed at the time of the sale, and to that extent is not in opposition to public policy and may be enforced. *Trenton Potteries Co.* v. *Oliphant, supra.*

It is said that a construction which makes the area embraced in this contract divisible is a forced one; that the words used in the contract describe an indivisible area, and express the intention of the parties in that regard. I cannot think so. Ordinarily it is a reasonable presumption that parties intend to make a valid contract; that in a case like the present they design to provide a restraint which will be reasonable, in their judgment, for the protection of the purchaser in the enjoyment of the subject of the purchase (Trenton Potteries case, 517), and I see nothing in the language used by these parties which requires the conclusion that their intention was that unless the full measure of protection afforded to the plaintiff by the contract was capable of enforcement against the defendant, there should be no protection at all against competition by the latter. The construction of this contract which makes the description of the restricted area divisible is certainly a possible one, and it seems to me that when a vendor endeavors to steal from his vendee the business which he has sold, having in his pocket the moneys which were paid to him for it, courts should be diligent in the endeavor to find a way to prevent the consummation of so fraudulent a scheme. As was said by Lord Macnaghten in *Nordenfeldt* v. *Maxim, &c., Co.* (1894), *App. Cas.* 573, in speaking of a case like the present, it seems almost absurd to talk of public policy in connection with such a case. It is a public scandal when the law is forced to uphold a dishonest act, and the public suffers no injury in being deprived of the privilege of dealing with a man who is carrying on his business in violation of his solemn engagement not to do so.

The construction of the present contract, which makes the territory it embraces divisible, is, as I have said, a possible one. That being so, public policy, which is best subserved

by the administration of *justice,* requires that it should be adopted.

The judgment under review will be reversed.

*For affirmance*—THE CHANCELLOR, SWAYZE, VOORHEES, GREEN, J.J.    4.

*For reversal*—THE CHIEF JUSTICE, GARRISON, REED, TRENCHARD, BERGEN, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J..    11.