52 N.J. Super. 197 (1958)
145 A.2d 149
FRANK CRETER, PLAINTIFF-APPELLANT,
v.
HARRY CRETER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1958.
Decided October 16, 1958.
*198 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Harry Weltchek argued the cause for appellant (Messrs. Weltchek & Weltchek, attorneys; Mr. Ernest Prupis, on the brief).
Mr. Matthew Krafte argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a judgment in favor of defendant entered by the Superior Court, Law Division, in an action seeking a declaratory judgment that a covenant not to compete, contained in a partnership agreement between the parties, is illegal and unenforceable because it encompasses an unreasonably large area and is *199 not ancillary to a sale of good will or a contract of employment; or, in the alternative, that if legal and enforceable, the covenant is not applicable to a dissolution of the partnership pursuant to the terms of the agreement.
Defendant answered denying the material allegations of the complaint. On plaintiff's motion for summary judgment the court held that the covenant was not per se against public policy and was applicable upon a lawful dissolution of the partnership, but there was a fact issue as to the reasonableness of the covenant. Plaintiff's application for leave to appeal from that decision was denied. Following the trial, the court entered judgment for defendant and this appeal ensued.
The parties are brothers. For some years prior to 1918 their father was engaged in the business of manufacturing and selling burial vaults in Newark. In that year plaintiff began to work for his father, defendant joining the business some ten years later. The father died in 1931, bequeathing the business to his widow. She operated it until January 1932, when she sold it to the parties to this action and a third brother who is no longer connected with the enterprise. In 1932 they formed a corporation, Philip Creter, Inc. The business continued under the corporate form until the parties to this action entered into a partnership operating under the name of Philip Creter Company on March 15, 1937. At some time in the past the business was moved from Newark to Irvington, where it has continued to date.
The partnership agreement provided that the partnership was to continue indefinitely at the will of the partners, and that any partner desiring to terminate the partnership must give six months' written notice. The contribution of each of the parties to the partnership capital was the amount of his share or interest in Philip Creter, Inc., then in process of dissolution. Paragraph 16 of the partnership agreement provided that
"In the event the said partnership is terminated by reason of one partner voluntarily retiring, or disposing of his interest in the partnership, or if he is compelled to retire by reason of his violation *200 of any of the clauses hereto, the partner so retiring shall not, at any time, either alone or generally, with or as agent for any person, either directly or indirectly, set up, exercise, or carry on the said trade or business of manufacturing or selling burial vaults within the State of New Jersey for period of five (5) years; and shall not set up, make, or encourage any competition to the said trade or business of the partnership, nor do anything to the prejudice thereof; and shall not divulge to any person any of the secrets, accounts or transactions of, or relating to the said co-partnership, and for any violation of this clause, the parties hereto bind themselves to each other in the sum of Ten Thousand ($10,000.00) Dollars, to be deemed liquidated damages and not in the nature of a penalty."
During the 21 years of the partnership's existence plaintiff and defendant operated the plant in alternate weeks, the arrangement being that when not so engaged plaintiff would promote additional business on the outside, defendant spending his off-weeks in collecting delinquent accounts. Personal difficulties and friction having arisen between the parties, plaintiff is desirous and anxious to dissolve the partnership lawfully, according to the provisions of the partnership agreement. He frankly states that upon doing so he intends to continue in the same type of business  the manufacture and sale of burial vaults  in the northern New Jersey metropolitan area, if not prohibited from doing so by paragraph 16 of the agreement.
The stipulation of facts reveals that during the life of the partnership its business has been almost entirely concentrated in the seven northern metropolitan counties of New Jersey. Over 93% of its deliveries were in the four counties of Essex, Union, Bergen and Morris. Sales in these counties and in Middlesex, Passaic and Hudson Counties have accounted for from 94.25% to above 99% of the firm's sales in a given year. In the entire history of the firm there has been but one delivery in Camden County and none whatsoever in Salem, Cape May, Gloucester, Cumberland and Atlantic Counties. Because of the weight of the vaults and shipping problems, including the necessity for speedy service, very few deliveries were made in the remaining counties; in fact, none of the remaining eight counties has ever accounted for even 1% of the partnership's sales. It is stipulated there *201 are a total of ten concerns, including the partnership, engaged in the same business in New Jersey.
Plaintiff argues that (1) the covenant contained in paragraph 16 of the partnership agreement is invalid and unenforceable because unreasonable as to territory and, further, unreasonable since it is ancillary to articles of partnership; and (2) it is inapplicable since the partnership is dissolved by its very terms, the dissolution not being in breach of the agreement.
We deal with plaintiff's first contention, that paragraph 16 is void because it covers too great a geographical area. The argument is that the partnership business never extended to the entire State of New Jersey, so that the covenant is unnecessary and unreasonable to protect that business and, therefore, unenforceable.
To be sustained, a restraint such as is here involved must be no broader than is reasonably required to protect the covenantee, and thus not unduly injurious to the public's interest in free competition. Trenton Potteries Co. v. Oliphant, 58 N.J. Eq. 507, 514-515 (E. & A. 1899); Fleckenstein Bros. Co. v. Fleckenstein, 76 N.J.L. 613, 615-616 (E. & A. 1908); Wyder v. Milhomme, 96 N.J.L. 500, 503 (E. & A. 1921); Gordon Supply Co. v. Galuska, 113 N.J. Eq. 353, 354-355 (Ch. 1933); Automobile Club of Southern New Jersey v. Zubrin, 127 N.J. Eq. 202, 203-204 (Ch. 1940), 36 Am. Jur., Monopolies, § 65, p. 544 (1941). The question of reasonableness is to be determined by reference to the nature of the business, the manner in which it has been conducted, and its territorial extent. Where the territory specified in the covenant is greater than that to which the business extends  i.e., greater than is reasonably required for its protection  the covenant is not sustainable.
The covenant here under consideration covers without exception the entire State of New Jersey, yet, as the stipulation makes manifest, the business of the partnership has never extended to the five southern counties named above. As noted, there has been but one delivery to Camden County in the south of the State. In the entire history of the *202 partnership it has made deliveries on an average of less than once a year in Mercer, Ocean, Burlington and Warren Counties, less than twice a year in Sussex and Hunterdon Counties, and about three times a year in Somerset and Monmouth Counties. All this during a period in which it sold over 30,000 burial vaults. Additionally, the firm dealt entirely with undertakers located within 15 miles of the Irvington plant, over 95% of its accounts being located within ten miles.
There is the further consideration that the business is one which is inherently local in character because of the very nature of its product. Burial vaults are ordered only after death occurs and must be delivered with great promptness. Because of their weight and the cost of long-distance deliveries, the Creter vaults become non-competitive in price when they have to be delivered at a distance. This accounts for the business being localized in the metropolitan Newark area.
Our courts have held that if the covenant involved restricts competition in an area to which the business has never extended, the covenant is invalid. In Automobile Club of Southern New Jersey v. Zubrin, above, the covenant prevented competition "anywhere in the State of New Jersey south of Trenton." Plaintiff conducted its insurance business in only four of the nine counties wholly or partially covered by the covenant. The court held the restriction invalid as beyond that necessary to the protection of the business, and refused its enforcement even though the competition was, in fact, in one of the four counties where the business was being done. Wyder v. Milhomme, above, dealt with a covenant not to compete "in the United States of America," and the court held it unreasonable, noting that the silk-finishing business there involved was confined to a somewhat restricted territory surrounding New York City. The covenant in Gordon Supply Co. v. Galuska, above, restrained defendant laundry truck driver, after leaving complainant's employment, from serving its customers in 18 distinct municipalities in Northern New Jersey and the *203 smaller municipalities adjacent thereto, as well as the City of New York and its vicinity. The court held it invalid as to defendant, who worked only one route in a few of the towns in the area.
The instant covenant is prima facie unreasonable. However, defendant argues that it is reasonably divisible and should be supported to the extent of those counties where the partnership has been shown to have done business  or at least the seven northern counties where almost all of the firm's business has been concentrated for the past 21 years. We are urged to apply the doctrine of "selective construction" whereunder a court, if it can find anything in the language of the covenant designating a specific portion of the entire restricted area to which the restriction can reasonably be confined, will do so. The extent to which courts will go in such an endeavor is illustrated by the Trenton Potteries case, above, where the covenant bound defendants to refrain from engaging in the business of manufacturing pottery ware "within any state in the United States of America or within the District of Columbia, except in the State of Nevada and the Territory of Arizona, for a period of fifty years." The court held this to be a divisible description, embracing not one whole area but several areas disjunctively described. It considered the restraint as applying to each separate state and upheld a restraint against defendants competing with plaintiff in New Jersey, rejecting its coverage for the other states.
In the Fleckenstein case, above, the court reviewed a restraint against competition "within five hundred miles from the city of Jersey City, New Jersey" at any time within 20 years. The court construed the restriction as covering two separate and distinct areas, one the City of Jersey City itself and the other in the territory between Jersey City and a boundary at all points 500 miles distant from the city limits. It sustained the covenant as to the City of Jersey City on the principle of selective construction.
Other illustrations of the doctrine are found in Credit Rating Service, Inc., v. Charlesworth, 126 N.J. Eq. 360 *204 (Ch. 1939); Sonotone Corp. v. Ellis, 4 N.J. Super. 331 (App. Div. 1949); and R.L. Guttridge, Inc., v. Wean, 8 N.J. Super. 450 (Ch. Div. 1950).
On the other hand, in Wyder v. Milhomme, discussed above, the court found it impossible to employ the "selective construction" rule of the Trenton Potteries and Fleckenstein cases, and thus held the entire restraint void. A similar result was reached in the Zubrin case.
It appears from an analysis of the foregoing cases that when possible to do so without completely destroying the language of the contract, the courts will construe an unreasonably broad restraint as severable. In such instance, the language of the covenant must be such as to permit a reasonable denomination of more than one area. We perceive no such basis for applying the doctrine of selective construction to the covenant in question. The restriction extends to the entire State of New Jersey; there is nothing in the language of paragraph 16 whereby any particular county or counties may be considered as separately identified. For the court to apply the restriction to particular counties would require us to rewrite the covenant. This we cannot do. The conclusion we have reached is in accord with the majority view in the United States, 5 Williston, Contracts (rev. ed. 1937), § 1660, p. 4683. Although we may agree with Williston that determination of the question of granting or not granting partial enforcement of a covenant not to compete might better turn on whether the covenantee, through superior bargaining power, has extracted a deliberately unreasonable and oppressive covenant, Id., §§ 1659-60, rather than on the mere verbal formula of the contract, we feel bound by the contrary decisions of our former highest court, especially in view of the fact that neither of the parties enjoyed a superior bargaining position when the partnership agreement was executed.
Accordingly, we conclude that the covenant is not enforceable as to any area less than the entirety of the State of New Jersey. This makes unnecessary consideration of any of the other arguments projected by plaintiff. In passing, *205 however, we note our disagreement with his contention that a covenant in restraint of competition is unreasonable merely because it is ancillary to articles of partnership. It is clear from such cases as Marvel v. Jonah, 83 N.J. Eq. 295 (E. & A. 1914) and Yanko v. Goldberg, 98 N.J. Eq. 536 (Ch. 1925), that a covenant not to compete, and otherwise reasonable, will not be denied enforcement merely because it is included in a partnership agreement. That those cases involved the entry of a new partner into an established business, rather than the formation of a new partnership by two equally contributing partners, is not a material distinction.
Reversed.