AWARD INCENTIVES, INC., a Corporation of the State of New York, Plaintiff-Respondent,

v.

Philip A. VAN ROOYEN, Jr., also Known as Philip Van Rooyen, Individually and Trading as The Achievement Company, Defendant-Appellant.

No. 12619.

United States Court of Appeals Third Circuit.

Argued Oct. 23, 1958.

Decided Feb. 3, 1959.

174

business covenant which was upheld by the district court.

Appellee, a New York corporation, has been a manufacturing jeweler since 1934. As a major part of its business it set up incentive programs [1] in the industrial and institutional fields. No charge was made for these. The company's profit came from the manufacture and sale of emblem type medals, honor awards and the like which were an integral part of the programs. A large portion of the merchandise involved, e. g., pens and pencils, was not manufactured by appellee but purchased. Appellee would thereafter affix particular emblems or engrave the merchandise with various slogans or other language.

It was considered important by appellee that its salesmen become acquainted with its customers, take a personal interest in their affairs and maintain a continuous social business relationship with them. The establishment of customer confidence in the salesmen and competitive pricing, according to the testimony of appellee's president, were the big elements in the success of the company.

Appellant entered into an employment contract as a salesman with Award Incentives, Inc. on December 5, 1947. He worked under that contract, handling the New Jersey and Greater New York City territory, until January 8, 1958, when he voluntarily resigned. The contract contained the following restrictive covenant:

"It is further understood that during the term of this agreement and/or any renewal, extension or modification thereof, and for a period of one year after the termination or cancellation of this agreement or any renewal modification or extension thereof, that you will not directly or indirectly enter the employment or render any services to any firm handling products or rendering services similar to our products and that you will not enter into or become interested in such a business

Richard M. Glassner, Newark, N. J. (Joseph Pierce Lodge, Camden, N. J., and Ira Bernard Dworkin, Flemington, N. J., on the brief), for defendant-appellant.

Samuel H. Nelson, Newark, N. J. (Irving J. Rosenberg, Newark, N. J., on the brief), for plaintiff-respondent.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The sole problem on this appeal concerns the validity of a restrictive

1. For such objectives as stimulation of business, saving of costs and accident prevention.

on your own account. It is further understood that during said period you will not communicate or divulge to anyone of the trade secrets, list of customers or secret processes of manufacture used by us."

Immediately following his resignation, appellant organized and from then on conducted a business similar to Award Incentives which he called "The Achievement Company". He sent out letters to this effect to the customers he had formerly serviced. Those customers, appellant stated, were located ninety-five per cent in New Jersey and perhaps five per cent isolated accounts in New York City and states other than New York and New Jersey. Appellant testified that up to trial time he had done about $3,000 worth of business with former Award Incentives customers and had other same type sales pending.

Prior to signing the contract containing the above quoted restrictive covenant, appellant consulted his mother's business advisor, her accountant and the instructor who at the time was teaching him "The Law of Business Contracts", who all assured him that the covenant was

illegal. With this in mind he accepted the contract, as he said, "in order to continue my work as sales representative of the company." He also testified that "I continued to work under the contract with the full knowledge that it was illegal."

Award Incentives sued appellant to enjoin him from violating his covenant. On the preliminary application, testimony was taken. The district court held that the parties intended " * * * that the restriction should apply only to the territory in which the defendant served and to which he was limited; in other words, the State of New Jersey and Greater New York in substance." It is from the preliminary injunction covering the territory above mentioned that this appeal is taken.

Jurisdiction is based on diversity. Plaintiff is a New York corporation; defendant, a resident of New Jersey. At the hearing below both sides (the plaintiff affirmatively and the defendant at least tacitly) considered that New Jersey law governed the validity and interpretation of the contract. The case was tried and decided on that theory.[2] Defendant-

2. The trial judge upheld the covenant upon the authority of Charles S. Wood & Company v. Kane, 1956, 42 N.J.Super. 122, 125 A.2d 872, where, as stated in the district court opinion, the Superior Court, Appellate Division, "in construing an agreement which failed clearly to prescribe the territorial limitation as to which the covenant was to be employed, remanded the case to the trial court for the purpose of hearing evidence bearing upon the intention of the parties with respect to the territorial limitations." The district court opinion goes on to say that: "I believe that in the light of all the evidence, there was a tacit or implied understanding or agreement that this limitation, which if construed at all should be construed to give it validity rather than invalidity, contemplated that the restriction should apply only to the territory in which the defendant served and to which he was limited; in other words, the State of New Jersey and Greater New York in substance."

The district court at the time its opinion was filed did not have the advantage of the New Jersey Superior Court, Ap-

pellate Division opinion in Creter v. Creter, 52 N.J.Super. 197, 145 A.2d 149, 153, which was not filed until October 16, 1958. That decision also involves a restrictive covenant and while, as with the Wood case, supra, it is not out of New Jersey's highest court it is the latest decision of that state's Superior Court, Appellate Division, and does unquestionably indicate the New Jersey law with respect to our present problem. It upholds the doctrine of selective construction "Whereunder a court, if it can find anything in the language of the covenant designating a specific portion of the entire restricted area to which the restriction can reasonably be confined, will do so." That is sound New Jersey doctrine. Trenton Potteries Co. v. Oliphant, E. & A.1899, 58 N.J.Eq. 507, 43 A. 723, 46 L.R.A. 255; Fleckenstein Bros. Co. v. Fleckenstein, E. & A.1908, 76 N.J.L. 613, 71 A. 265, 24 L.R.A.,N.S., 913. The covenant in Wood was brought within the selective construction doctrine because of its ambiguous language. The difficulty with the covenant before us is that its wording does not permit mis-

appellant on this appeal, admittedly, for the first time urges that New York law governs the validity and interpretation of the contract. Appellee argues with great force that the contention comes too late. We are bound to apply the governing law, Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 and because the particular fact is vital to the proper decision of the case we have examined the record with particular concern as to whether it sufficiently reveals enough facts concerning the contract to enable us to pass upon the question. We find that the letter comprising it was written and signed for the plaintiff corporation by its president at its home office in New York City; that it was addressed to the defendant at the said office where it was signed by him. The testimony, especially that of Van Rooyen, Jr., makes it very clear that his employment was out of the New York office; that he did some telephoning to and with customers as well as correspondence with them from the office and that he also called on those nearby. The contract indicates that he was both reimbursed for his expenses and paid his drawing account at the New York office.[3] The company kept strict supervision over defendant, the contract containing the following:

"It is also agreed that you will keep the Home Office of Award Incentives, Inc. promptly informed of all calls made and the results of such calls, in such form and in such manner as we may require.

"The company agrees to work with you to the fullest degree, along good business practice, in giving you promptly, their lowest prices, making up sketches of designs free of cost, supplying samples, literature, cards, reports, leads, when and as

---

understanding. It states that Van Rooyen, Jr. " * * * will not directly or indirectly enter the employment or render any service to any firm handling products or rendering services similar to our products and that *you will not enter into or become interested in such a business on your own account*." (Emphasis supplied.)

It is impossible to ascribe ambiguity to this language. For the duration of the covenant it unmistakably requires appellant not to engage in appellee's kind of business at all, no matter where appellant's enterprise might be located or which territory might be involved. To attempt to reduce the written contract to simply barring Van Rooyen, Jr. from operating a similar sort of business in New Jersey is to make a new agreement for the parties. The Creter opinion sums up what we think is the present New Jersey law on this when it says at page 204, of 52 N.J.Super. at page 153 of 145 A.2d.

"It appears from an analysis of the foregoing cases that when possible to do so without completely destroying the language of the contract, the courts will construe an unreasonably broad restraint as severable. In such instance, the language of the covenant must be such as to permit a reasonable denomination of more than one area. We perceive no such basis for applying the doctrine of selective construction to the covenant in question. The restriction extends to the entire State of New Jersey; there is nothing in the language of paragraph 16 whereby any particular county or counties may be considered as separately identified. For the court to apply the restriction to particular counties would require us to rewrite the covenant. This we cannot do."

See also Automobile Club of Southern New Jersey v. Zubrin, Ch.1940, 127 N.J. Eq. 202, 12 A.2d 369; Credit Rating Service, Inc. v. Charlesworth, Ch.1939, 126 N.J.Eq. 360, 8 A.2d 847; Sonotone Corporation v. Ellis, App.Div.1949, 4 N.J.Super. 331, 67 A.2d 186; R. L. Guttridge, Inc. v. Wean, Ch.Div.1950, 8 N.J.Super. 450, 73 A.2d 284.

It should be noted that the New Jersey Supreme Court has now allowed certiorari in Creter, 52 N.J.Super. 197, 145 A.2d 149. The decision is criticized in Rutgers Law Review Vol. XIII, page 393, which stresses the thought above mentioned to the effect that unless and until Creter is reversed by the Supreme Court it is the law of New Jersey.

3. The contract reads as to this:
   "On all daily expenditures running over $1.25, a slight explanation should be made on the expense sheet, which is to be turned in every Monday evening. These expenses will be paid on every Tuesday along with your drawing."

received that affects your territory, etc., and in all such matters, the judgment of the company is to be considered controlling.

\* \* \* \* \* \*

"It is further understood and mutually agreed that you will abide by all rules and regulations of Award Incentives, Inc. This applies to working hours, coverage of territory and the registration system of account and all other matters dealing with the procedure of the company."

From all of the above, the contract was not only drawn and executed at plaintiff's home office in New York City, but a great deal of the work in connection therewith was intended to be and was actually performed at said office. Therefore New York law unquestionably is controlling regarding its validity and interpretation. United States Mortgage and Trust Co. v. Ruggles, 258 N.Y. 32, 1932, 179 N.E. 250, 251, 79 A.L.R. 802; F. A. Straus & Co. v. Canadian Pacific R. Co., 254 N.Y. 407, 1930, 173 N.E. 564, 567; Cray, McFawn & Co. v. Hegarty, Conroy & Co., D.C.S.D. N.Y., 1939, 27 F.Supp. 93, 96, affirmed 2 Cir., 1940, 109 F.2d 443.

This brings us to the question of the enforceability of the restriction under the New York decisions. As with most limitation or prohibition of employment covenants whether it will be enforced depends to a large extent upon its own facts. Appellant urges that the case of Murray v. Cooper, 1944, 268 App.Div. 411, 51 N.Y.S.2d 935, 936, affirmed per curiam 294 N.Y. 658, 1945, 60 N.E.2d 387, is dispositive of the restriction, clearly indicating its invalidity. To the contrary we think the restriction is directly within the exception of the Appellate Division opinion which states:

*"In the absence of any findings of specific misconduct by the defendant,* we are constrained to hold that it is against the public policy of the State of New York to enforce contracts *which in the absence of special circumstances* prevent a person working at his occupation or entering the same line of business as that of his former employer." (Emphasis supplied.)

In Elbe File & Binder Co. v. Fine, 137 Misc. 255, 1930, 242 N.Y.S. 632, 634 the exception to the general rule as noted in the Murray decision is perfectly illustrated. There the main facts were almost identical with those on this appeal. The salesman employee agreed, not for one year as did Van Rooyen, Jr., but for five years after termination of his employment not to engage in a competitive business with his employer. Just as with Van Rooyen, Jr., the defendant was, as the opinion states at page 634, not "an ordinary employee leaving the employ of the employer and taking a job with some other concern." As here, the agreement contained no limitation with respect to space. There too the salesman, following his attorney's opinion to him that the employment contract was illegal, entered into it deliberately. The court held at page 634:

"The defendant entered into this contract with his eyes open, with full knowledge of what he was doing, and he promised, as part of the consideration of his employment, the benefits of which he was to receive, that he would not engage, directly or indirectly, in any competing business for five years after the termination of the contract. He has knowingly violated that contract solemnly entered into. I say he did so because he testified that his counsel gave him his legal opinion as to the effect of his contract. He entered into this contract hoping that this provision was illegal and that after receiving the full benefits of the contract from the plaintiff under the contract he could at will violate the covenant that he made. Under all the circumstances of the case, equity will enforce this negative covenant."

We have not ourselves found nor have we been referred to any other New York decision with the same peculiar situation as appears in the Elbe suit and which is on all fours with the facts before us. We must conclude that the Elbe opinion,

which is clearly within the Murray exception, indicates the controlling New York law. Since appellee affirmatively agrees with the trial court that the intent of the parties was to limit the restriction of the covenant to New Jersey and Greater New York and with no cross appeal by plaintiff, there is no question before us regarding the broadening of the scope of the injunction.

The order of the district court will be affirmed.