85 N.J. Super. 27 (1964)
203 A.2d 625
RUBEL & JENSEN CORP., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
IRVING M. RUBEL, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1964.
Decided September 28, 1964.
*29 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Meyer Pesin argued the cause for defendant-appellant and cross-respondent.
Mr. Justin P. Walder argued the cause for plaintiff-respondent and cross-appellant.
*30 The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant appeals from a judgment of the Chancery Division which (1) enjoins him until October 10, 1965 from soliciting, directly or indirectly, in any retail fuel distribution or heating equipment sales and installation business, any customers of plaintiff or its affiliate companies within the counties of New Jersey lying north of Middlesex County, (2) further restrains him for the period of five years from October 10, 1960 within the proscribed area from using the name "Rubel" as a part of any firm, partnership or corporate name in any retail fuel oil distribution business or heating equipment sales and installation business in which he may engage, and (3) awards plaintiff $6,305.09 as damages against defendant for breach of their agreement of October 10, 1960.
Plaintiff cross-appeals from the damage provision of the judgment, claiming that the trial court erred in limiting the measure of damages to the time period of the restrictive covenant.
Defendant contends that the restrictive covenant in issue, contained in a written employment contract executed by the parties on October 10, 1960, (a) is so vague, uncertain and unreasonably broad as to be unenforceable, and (b) exceeds the reasonable requirements of plaintiff because the restrictions in time, area and scope are too great. Defendant further maintains that there was no proof of his violation of the contract; the damages were speculative, remote and erroneously calculated by the trial court, and error was committed in permitting plaintiff's proof of damage, in view of the complaint and pretrial order.
We deem it expedient to note the factual background of the case in order to put the issues in proper focus.
On October 5, 1960 plaintiff, as purchaser, entered into a written agreement with Rubel & Jensen Co., as seller, for the purchase of the seller's retail fuel oil distribution and heating equipment business for $270,000. The sale included, besides some office furniture and supplies, a list of about *31 1900 customer accounts of the seller, the good will of the seller and the exclusive right to the use of the name "Rubel & Jensen" in connection with its retail fuel oil distribution, heating and service business. The business being sold was owned essentially by defendant's brother, Harry L. Rubel, who was its president, but defendant had been actively engaged in the business for over 25 years prior to the agreement of sale, principally as a salesman soliciting and handling customers' accounts, and he acted as secretary of the seller, attesting to the October 5, 1960 agreement in that capacity.
This agreement further provided for the employment of Harry L. Rubel in a personal customer relations capacity at a salary of $15,000 for the period from transfer of title until June 30, 1961, and Harry covenanted that he would not, for a period of five years from the date of delivery of the bill of sale, within those counties of the State of New Jersey lying north of Middlesex County, engage in the retail fuel oil distribution business, or the sale and installation of any type of heating equipment in any residential property consisting of accommodations for six families or less, or use the name "Rubel" in connection with any fuel oil distribution or heating equipment sale and installation business in which he might engage. This covenant by Harry L. Rubel is not in issue in this case.
In the October 5, 1960 agreement plaintiff purchaser also agreed that it would enter into a contract of employment with defendant for a period of two years at a salary of $15,000 per year, payable weekly, to serve as treasurer of the purchaser and in such other executive, administrative or managerial capacity as might reasonably be required by the purchaser. It was also stipulated with reference to the employment contract to be entered into with defendant:
"Said contract shall provide that Irving M. Rubel shall not, within the counties of the State of New Jersey lying North of Middlesex County,
*32 (a) For a period of two years from the date of the employment contract engage in the retail fuel oil distribution business or the sale and installation of any type of heating equipment.
(b) For a period of five years from the date of the employment contract use the name `Rubel' as a part of any firm, partnership or corporate name of any retail fuel oil distribution business or heating equipment sales and installation business in which he may engage, and will not solicit, directly or indirectly, any customers of the Purchaser or any of its affiliate companies."
Such a written employment contract was entered into between plaintiff and defendant on October 10, 1960 and defendant made a covenant therein as quoted above.
Defendant was in plaintiff's employ at a salary of $15,000 for each of the first two years of his employment and thereafter was paid at the rate of $17,500 per annum until March 23, 1963, when his employment was terminated. During this engagement of about 2 1/2 years he served as treasurer of plaintiff and as office manager of "Rubel & Jensen, Liberty Fuel Oil and Lindeman Fuel Oil," the latter being affiliates of plaintiff. While in plaintiff's employ, he dealt with various customers on credit matters, matters of delivery, service and complaints. This knowledge and service were in addition to his 25 years of personally dealing with and handling the business problems of the various customers in his brother's business which plaintiff purchased.

I.
Defendant's primary attack upon the propriety of the judgment against him is his contention that the restrictive covenant in issue is so vague, uncertain and unreasonably broad in time, territory and scope as to be unenforceable. We are not concerned herein with subdivision (a) of the covenant, quoted above, because the two-year limitation therein expired on October 10, 1962 and plaintiff makes no claim as to any violation thereof. We limit our consideration hereinafter to subdivision (b).
Contrary to defendant's contention of vagueness and uncertainty, we find that the covenant is clear and definite *33 as to time, territory and scope. The time provided for in subdivision (b) is "five years from the date of the employment contract." The employment contract is dated October 10, 1960. Obviously, therefore, this covenant extended to and will expire on October 10, 1965. The territory embraced by the covenant consists of "the counties of the State of New Jersey lying North of Middlesex County." The parties agree that there are ten such counties, to wit, Essex, Union, Hudson, Bergen, Passaic, Morris, Somerset, Sussex, Warren and Hunterdon. The other 11 counties of New Jersey are excluded.
The covenant makes plain the restrictions upon defendant's activities during the prescribed time and within the designated area. (1) He may not "use the name of `Rubel' as a part of any firm, partnership or corporate name of any retail fuel oil distribution business or heating equipment sales and installation business in which he may engage." (2) He may not "solicit, directly or indirectly, any customers of the Purchaser [plaintiff] or any of its affiliate companies." The prohibition upon the use of the name "Rubel," as part of a competitive business name, is clearly expressed and easily understood. The restrictions upon the solicitation, directly or indirectly, of the customers of plaintiff or any of its affiliate companies, is certainly not vague or uncertain. Defendant was a salesman for his brother's company in this retail fuel oil distribution and allied heating equipment business for more than 25 years. He knew what it meant to "solicit" customers. He knew plaintiff's customers. A list of the customer accounts purchased by plaintiff from Rubel & Jensen Co. was annexed to the bill of sale, pursuant to the agreement of October 5, 1960 which defendant had attested as secretary of the seller. He knew plaintiff's affiliates in this business. As hereinafter noted, he admitted in an affidavit filed in the cause that he did, after terminating his employment with plaintiff, "solicit about a dozen persons with whom I did have business contact when I was office manager of Rubel & Jensen Co."
*34 This limitation upon defendant's business activities was not unreasonably broad or in excess of plaintiff's reasonable requirements for the protection of the business and property rights which it had purchased for $270,000 from defendant's brother. The list of Rubel customers, the good will of the business, and the exclusive right to use the name "Rubel & Jensen" were principal assets and property rights for which plaintiff had paid a substantial purchase price. Defendant knew this and was an interested party in the transaction, even though he may have been only a nominal stockholder in his brother's company. The covenant restricting him was clearly part of the consideration bargained for by the purchaser, and defendant was willing to enter into it to enable his brother to effectuate the sale of this business.
The covenant did not restrict defendant at all in personally conducting a competitive business or being employed by a competitor of plaintiff even during the five-year period and within the ten counties lying north of Middlesex County, so long as he did not within that time and area use "Rubel" in the competitive business name and did not "solicit" plaintiff's customers. He could have, at any time, formed a new company, choosing any one of a thousand names for it, other than "Rubel," and competed with plaintiff freely anywhere, avoiding only in that instance a solicitation of plaintiff's customers in the forbidden area.
The restrictive covenant in question did not even forbid defendant from doing business at any time with plaintiff's customers, in other than a "Rubel" business name, so long as he did not "solicit" them, directly or indirectly. Thus, some of plaintiff's customers might have brought their fuel oil and heating equipment business to him of their own accord, unsolicited directly or indirectly by him, and he could have done business with them in other than a "Rubel" firm name without violating the covenant. Such covenants, especially as to employees, are "strictly construed and rigidly scanned." Haut v. Rossbach, 128 N.J. Eq. 77, 80 (Ch. 1940), affirmed o.b. 128 N.J. Eq. 478 (E. & A. 1941).
*35 The covenant in issue is different from the ordinary covenant in restraint of trade, in which the seller of a business or an employee agrees that he will not engage in a competitive business. When such a covenant is made, the courts will enforce it against the covenantor where the restraint is reasonably necessary for the protection of the purchaser's or employer's business and not unreasonably restrictive in point of time or territory of the rights and opportunities of seller or employee, or oppugnant to the public interests. Chas. S. Wood & Co. v. Kane, 42 N.J. Super. 122, 125 (App. Div. 1956); Sonotone Corp. v. Ellis, 4 N.J. Super. 331, 334-5 (App. Div. 1949). Here we have, rather, a contractual limited surrender by a person of his normal right to use his surname as part of the name of a business and a promise on his part not to solicit his employer's customers. Except for those two restrictions, limited in time, territory and scope, there was no restraint upon defendant's setting up or being employed in a competitive business anywhere or at any time. Certainly, these restrictions were reasonably necessary for the protection of plaintiff's property rights, which it had purchased from defendant's brother for a very substantial sum of money. Nor were they unreasonably restrictive of defendant's rights and opportunities or prejudicial to the public interests.
The five-year provision in this contract was not unreasonable. Each case must be judged on its own particular facts. Covenants extending for much longer periods have been upheld as enforceable. In R.H. Perry & Co. v. Burns Bros., 101 N.J. Eq. 409 (Ch. 1927), affirmed o.b. 103 N.J. Eq. 366 (E. & A. 1928), a 20-year covenant not to engage in the coal business within a defined territory was upheld as clearly necessary for the protection of the business sold and was deemed to be not contrary to public policy. In Voices, Inc. v. Metal Tone Mfg. Co., 119 N.J. Eq. 324 (Ch. 1936), affirmed o.b. 120 N.J. Eq. 618 (E. & A. 1936), certiorari denied 300 U.S. 656, 57 S.Ct. 433, 81 L.Ed. 866 (1936), an 18-year covenant in restraint of trade was found valid as *36 reasonably necessary to the protection of the interest involved. In Nachamkis v. Goldsmith, 101 N.J.L. 356 (E. & A. 1925), a 10-year covenant in a bill of sale of a wholesale cracker and biscuit business was found to be not an unreasonable restriction.
In Sarco Co. of New Jersey v. Gulliver, 3 N.J. Misc. 641, 129 A. 399 (Ch. 1925), affirmed o.b. 99 N.J. Eq. 432 (E. & A. 1926), the covenant was in a contract of employment and therein the employee agreed that she would not work as a stenographic reporter within limited territory for five years after termination of the employment. In upholding the covenant as not harsh, unreasonable, or contrary to public policy, the court said with reference to the five-year term:
"Five years is the period of limitation fixed in the most of these negative covenants. So many covenants with a 5-year limitation have been upheld and enforced in this court that the question of the reasonableness of that period needs no further argument, especially when considered in conjunction with the facts of this case, the character of the business, the length of time complainant and its predecessor had been building up the business, and the unlimited period of complainant's corporate existence." 3 N.J. Misc., at p. 645
We find that language applicable to the facts of this case.
Actually, the restriction upon defendant's activities extended only three years beyond the two-year period fixed for his employment by plaintiff. Restrictive covenants extending for three years beyond termination of employment have been upheld in numerous cases. For example, see Credit Rating Service v. Charlesworth, 126 N.J. Eq. 360 (Ch. 1939), a three-year covenant not to engage in a business similar to that of his employer after discontinuance of the employment; Pilgrim Coat, Apron, &c., Inc. v. Krzywulak, 141 N.J. Eq. 212 (Ch. 1948), a three-year covenant by an employee that he would not "directly or indirectly * * * solicit * * * customers" of his employers after termination of the employment.
Defendant argues that the area proscribed exceeds the reasonable requirements for the protection of plaintiff's business, *37 because at the time of the sale to plaintiff the business was being carried on in only six of the ten counties north of Middlesex County. Concededly, the bulk of plaintiff's business was and is in the counties of Essex, Union and Hudson, and principally in Essex County. Plaintiff has relatively few customers in Bergen, Passaic and Morris. It had no customers in Somerset, Sussex, Warren or Hunterdon, even at the time of trial in January 1964. However, there was testimony that plaintiff and its affiliates had about 4000 customers in the six counties where it actually transacted business; that some of these were chain store accounts, and that it reasonably anticipated, when it made its agreement with defendant, that its fuel oil distribution business would expand into the other four adjoining counties.
The trial court found that plaintiff had a very large fuel oil distribution business; that the proofs indicated that further extensions of this business to the four border counties could be reasonably anticipated, and it was not unreasonable to preclude defendant from using the "Rubel" name and soliciting plaintiff's customers in those counties. The evidence supports those findings, even though hindsight shows that reasonable anticipation did not ripen into reality. See Fleckenstein Bros. Co. v. Fleckenstein, 76 N.J.L. 613, 615 (E. & A. 1908); Wyder v. Milhomme, 96 N.J.L. 500 (E. & A. 1921); Automobile Club of Southern New Jersey v. Zubrin, 127 N.J. Eq. 202, 204 (Ch. 1940); Schultz v. Johnson, 110 N.J. Eq. 566, 568 (E. & A. 1932), as support for the view, although hitherto there has been no square holding on the point in this State that a covenant in restraint of trade may be made applicable not only to the territory in which the business was transacted at the time of the sale, but also to "any extension of that territory, by expansion of the business sold, as might have been reasonably contemplated by the parties, at the time of the sale." Schultz v. Johnson, supra, at p. 568.
As a general rule, the territory specified in a post-employment restraint may not be greater than that to which *38 the business extends. Hudson Foam Latex Products, Inc. v. Aiken, 82 N.J. Super. 508 (App. Div. 1964); Creter v. Creter, 52 N.J. Super. 197 (App. Div. 1958); Automobile Club of Southern N.J. v. Zubrin, supra; Wyder v. Milhomme, supra. It is noteworthy, however, that in these cases the employee was totally prohibited from engaging in any business similar to that of his employer in an area in excess of that reasonably necessary for the protection of the employer's business. No such total prohibition exists in the instant case. In fact, so far as the restraint upon soliciting plaintiff's customers is concerned, the covenant herein has no effectiveness at all in the four counties where plaintiff has no customers, and only a de minimis impact upon defendant's activities in three other counties where plaintiff has relatively few customers. Thus, the restraint is not upon defendant's competitive business activities in those counties, but only upon his soliciting plaintiff's customers, if any, therein.
The following language in Pilgrim Coat, Apron, &c., Inc. v. Krzywulak, supra, is appropriate here:
"The degree to which the covenant inhibits the future activities of the employee is a notable element of consideration in measuring its fairness and propriety. It is observed that the covenant here impugned does not enjoin the defendant from accepting employment from a competitor of the complainant nor from engaging in a like enterprise anywhere. The prohibition embraces only the `soliciting * * * of the customers' * * *." 141 N.J. Eq., at p. 216
Defendant's temporary surrender of the right to use his surname as part of the business name of a competitive business even in counties where plaintiff carried on no business at the time of the covenant, but into which it might expand its activities during the five-year period of the covenant, was similarly such a de minimis limitation upon defendant's competitive business activities in those counties as not, in any event, to constitute any unreasonable restraint of trade.
Moreover, the trial court properly observed that under the doctrine of "selective construction," as set forth in Trenton *39 Potteries Co. v. Oliphant, 58 N.J. Eq. 507 (E. & A. 1899); Fleckenstein Bros. Co. v. Fleckenstein, supra, and Creter v. Creter, supra, 52 N.J. Super., at p. 204, the language of the covenant is broad enough to warrant the court's construing the restraint as severable and applicable at the very least to Essex County, where most of plaintiff's business is carried on. We agree with the trial court's finding that it is unnecessary to do so in this case because the covenant in question is not unreasonable, is not prejudicial to the public interest, and should be given full force and effect.

II.
The evidence supports the finding by the trial court that defendant did violate the covenant. Recital of that evidence is set forth in the trial court's letter opinion of January 29, 1964 and need not be detailed here. Defendant admitted in an affidavit filed in the cause that he did, in anticipation of employment by a competitor of plaintiff, "solicit about a dozen persons" with whom he had contact when he was office manager of Rubel & Jensen Co., the predecessor firm, and with whom he continued to have contact while employed by plaintiff. He also stated in that affidavit: "I had originally solicited and obtained these accounts when I was office manager of the plaintiff's predecessor." In answers to interrogatories, defendant furnished the names of those customers. The trial court found that 11 such customers had been solicited by defendant and thereafter became customers of a competitor, Rettig Fuel Company, with whose president defendant had been negotiating employment by that firm.
While it is true that defendant denied at the trial any such solicitation, thus giving testimony at variance with his affidavit, the trial court found that testimony lacking in credibility. We may make new and independent findings of fact in cases tried without a jury, R.R. 1:5-4(b), R.R. 2:5, but we have been cautioned by the Supreme Court that "when *40 the result of the contest must turn on the truthfulness of witnesses, the superior advantage of the trial judge in seeing and hearing and appraising the disputants must ordinarily be regarded as the fulcrum on which the issue should be resolved." Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 423-4 (1961). There was reasonable support for the trial court's finding that the defendant did violate the covenant by soliciting 11 of plaintiff's customers. As the trial court also correctly noted:
"The fact that defendant was not paid for such services is of no moment. Presumably he would have been compensated if he were free to consummate his employment arrangements with Rettig."

III.
Both sides question the quantum of damages awarded. The trial court computed the damages on the basis of testimony given by plaintiff's comptroller, who presented an analysis of the 11 "lost" accounts. This analysis showed the annual gallonage supplied to each account, the average price, the amount billed, including service contracts, and the total revenue received. The comptroller then deducted the cost of fuel oil and allocated trucking expenses, drivers' wages and service costs, arriving at a total cost incurred on each account and a resultant net profit. Eliminated from his calculations of cost were expenses, such as insurance and rent, not reduced by the loss of the 11 customers. According to these calculations, the 11 customer accounts produced a total annual revenue of $10,910.44. The total annual costs incurred on these accounts was $8,283.39, with a resultant annual net profit of $2,627.05.
There was testimony on behalf of plaintiff that its experience indicated the life of a customer account to be 11.67 years and, since it acquired these accounts in October 1960 and lost them in May 1963, it had enjoyed only 2.67 years of the account, leaving a net loss of nine years of expectant business. On this theory it claimed nine times the annual *41 net loss of $2,627.05 for a total of $23,643.45. The trial court rejected this approach in favor of a more realistic one. It noted that these customers were personal followers of defendant and would probably deal with him as soon as he was legally free to deal with them, that is, after October 10, 1965. Therefore, as to ten of the customer accounts, the trial court calculated the loss on the basis of two years and five months (May 1963 to October 1965), and as to the eleventh (Caruso) account on a basis of two years and one month (September 1963 to October 1965). The Caruso account was lost in September 1963 and its annual profit amounted to $130.83. The other accounts were lost in May 1963, and the reasonably probable lost profits thereon amounted to $6,032.53. Accordingly, damages were awarded in plaintiff's favor for a total of $6,305.09.
We agree with the trial court that a realistic view of the situation and the rule of probabilities do not support plaintiff's theory. We conclude that the allowance of lost profits only until the expiration of the covenant was a sound and proper determination.
Defendant argues that the damages should have been calculated on a profit per gallon basis. However, we find that the trial court's approach in assessing damages was reasonable. In an area where mathematical certainty is not possible or required, a reasonable approach based upon reasonable probabilities is permitted. Coll v. Sherry, 29 N.J. 166, 175 (1959). And doubts are generally resolved against the party committing the breach of contract. Hodgson v. Applegate, 55 N.J. Super. 1, 17 (App. Div. 1959), affirmed 31 N.J. 29 (1959).
We find no substantial merit in defendant's contention that no damages were assessable because plaintiff sought only an accounting and, since defendant received nothing from the lost accounts, there was nothing to account. The complaint sought not only injunctive relief and an accounting, but also demanded a judgment for compensatory and punitive damages. Paragraph 7 of the pretrial order listed *42 as one of the issues "compensatory and punitive damages," as well as the right to injunctive relief and an accounting. The issue of damages was fully tried, including the testimony on behalf of defendant as to its claim as to a proper measure of damages.
For the reasons above stated, the judgment is affirmed. Plaintiff having prevailed on defendant's appeal and defendant having prevailed on plaintiff's cross-appeal, there will be no costs on appeal by either party as against the other.