### CERESIA v. MITCHELL et al.

Court of Appeals of Kentucky.

June 15, 1951.

Rehearing Denied Oct. 12, 1951.

---

T. O. Jones, Greenville, Woodward, Bartlett, Hobson & McCarroll, Owensboro, for appellant.

W. D. Bratcher, Greenville, Arthur T. Iler, Central City, for appellees.

MILLIKEN, Justice.

This is an appeal from a judgment enjoining the appellant, Ceresia, who was the defendant below, from engaging in competition with the business of the appellees in Central City and Muhlenberg County in violation of the provisions of a contract of sale. The effectiveness of the injunction was made coextensive with the term of a lease which will expire March 31, 1957.

The appellant, Lorenzo Ceresia, is an elderly man, in his early seventies, and had operated a wholesale fruit and vegetable business in Central City and adjoining territory for many years. He has little formal education——about the equivalent of two years in grade school——speaks English brokenly, yet has prospered in the land of his adoption. On the other hand, the appellees are a family partnership comprised of a young war veteran, his sister and his father. Mr. Ceresia pleads that they defrauded him when they purchased his business in 1947, but there is no evidence to sustain his charge.

The situation unfolded by the testimony reveals Mr. Ceresia as an ailing widower with a very young son and a thriving business. Undoubtedly, influenced by the state of his health he wished to sell the business as a going concern in order to realize its full worth, and had made at least two unsuccessful efforts to sell the business on comparable terms before negotiations started between him and the appellees. Alex Mitchell, Jr., a young war veteran, had worked for Mr. Ceresia for six weeks before Mr. Ceresia approached him about purchasing the business. The sale was consummated in March, 1947, for a sales price of $10,000 for the business, including equipment and good will, an additional $1-650 for the stock in goods on hand, and a lease of the site of the business for $50 a month for a ten-year period with the right of renewal. The lease and purchase agreement were drafted by a woman, not a lawyer, who had done similar work for Mr. Ceresia over a period of many years. Apparently, neither side to this litigation consulted a lawyer until Mr. Ceresia returned from an extended vacation in September, 1947, restored in health, and found his former business had greatly prospered in the hands of its new owners. The fact that appellees conducted the business in the leased building in the yard back of Mr. Ceresia's home, used the driveway which ran along the side of his house, and, because of the great growth of the business used the driveway more than had Mr. Ceresia, all led to a series of irritations which bred ill will, led to Mr. Ceresia reentering the wholesale fruit and vegetable business in Central City, and finally led to the institution of this litigation in September, 1949.

Mr. Ceresia testified that he renounced the agreement he had made with the Mitchells when he returned home in September, 1947, and that they acquiesced therein, that he was too ill to know what he was doing when he made the agreement with them in March, 1947, but there is no evidence in the record of a tender to the Mitchells of any or all of the $10,000 received from them as the purchase price of the business, and he continued to accept the monthly rental under the lease.

The contract of sale and the lease are ineptly drawn, contain many provisions which courts would not enforce and skilled lawyers would not include, yet they crudely cover the gist of the business transaction consummated by the parties to this litigation. While Mr. Ceresia has alleged fraud in general terms, that he was overreached, that he was too ill to know what he was doing when he signed the contract and lease, that he never understood the contents of the writings which he had signed until he read them upon his return home in Sep-

tember, 1947, the evidence adduced does not bear out his contentions. Without detailing the contract of sale and lease, we shall confine ourselves to the portion of them which we consider relevant to the relief sought by the appellees and granted by the chancellor: "It is distinctly understood and agreed to by all the parties to this Bill of Sale, Agreement and Contract and is an essential part of the consideration in same that the said party of the first part (Ceresia) is forever barred and prevented from engaging in any kind of business of whatsoever kind, character or nature in his own name or in the name of any other person or persons with him as a silent partner in the County of Muhlenberg and State of Kentucky. This forever preventing and barring from engaging in business in Muhlenberg County, Kentucky, of the parties of first part, Lorenzo Ceresia also extends to his children, his Executors and Administrators, for the reputation that has been established by Lorenzo Ceresia in the business of the Central City Produce Company is a most valuable part of the property that is being bought under and by virtue of this Bill of Sale. The said parties not only sold unto the parties of the second part the business of the Central City Produce Company, but there was also sold and conveyed for the purchase money paid in cash, all of the good will and influence of the said Lorenzo Ceresia who does here and now agree to at all times to use his influence and power in behalf of the parties of the second part in order to make this business venture of theirs a perfect success, and this he could not do if he had interest in any other business in Muhlenberg County, Kentucky, or in an adjoining county."

While this language is too broad in its scope for its specifications to be palatable, it, nevertheless, expresses in lay terminology an intention to transfer the good will as "a most valuable part of the property that is being bought under and by virtue of this Bill of Sale." The importance placed on the good will of the business in the minds of the buyers is borne out by our belief that over one–half of the $10,000 given for the business covered the element of good will, for the value of the

physical assets transferred was relatively small. From his knowledge of the business the chancellor confined the scope of the restraint imposed upon Mr. Ceresia under the contract to his activities in the fruit and vegetable business in Central City and Muhlenberg County until the expiration of the term of the lease on March 31, 1957. We believe the chancellor's conclusion is practicable and just. As stated in Section 1390 of Corbin on Contracts, Vol. 6, pages 499 to 502, West Publishing Company, 1951:

"An agreement restricting competition may be perfectly reasonable as to a part of the territory included within the restriction but unreasonable as to the rest. Will the courts enforce such an agreement in part while holding the remainder invalid? It renders no service to say that the answer depends upon whether or not the contract is 'divisible.' 'Divisibility' is a term that has no general and invariable definition; instead the term varies so much with the subject-matter involved and the purposes in view that its use either as an aid to decision or in the statement of results tends to befog the real issue.

"With respect to partial illegality, the real issue is whether partial enforcement is quite possible without injury to the public and without injustice to the parties themselves. It is believed that such enforcement is quite possible in the great majority of cases. If a seller whose business and good will do not extend beyond the city limits of Trenton promises not to open a competing business anywhere within the state of New Jersey, the restriction is much greater than is reasonable. This is a good reason for refusing to enjoin the seller from doing business in Newark; but it is not a good reason for permitting him to open up a competing store within the same block in Trenton.

"In a good many cases it was held that if the contract itself indicated no geographical line between the reasonable and the unreasonable, it was 'indivisible' and illegal as a whole. Thus, if a seller promised not to compete anywhere in England the whole was void, but if he promised not to compete in London or elsewhere in England, partial

enforcement was possible in case the business had extended throughout London.

"In very many cases the courts have held the whole contract to be illegal and void where the restraint imposed was in excess of what was reasonable and the terms of the agreement indicated no line of division. In the best considered modern cases, however, the court has decreed enforcement as against a defendant whose breach has occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement imposed a larger and unreasonable restraint. Thus, the seller of a purely local business who promised not to open a competing store anywhere in America has been prevented by injunction from running such a store within the same block as the one that he sold. In some cases it may be difficult to determine what is the exact limiting boundary of reasonable restriction; but often such a determination is not necessary. The question usually is whether a restriction against what the defendant has in fact done or is threatening would be a reasonable and valid restriction. The plaintiff should always be permitted to show the actual extent of the good will that is involved and that the defendant has committed a breach within that extent. If a restriction otherwise reasonable has no time limit, it is quite possible for the court to grant injunctive relief for a specific and reasonable time."

The Restatement of the Law of Contracts, Section 518, follows the doctrine that the whole contract is illegal and void where the restraint imposed is in excess of what is reasonable and the terms of agreement indicate no line of division. Corbin states that the Restatement provision probably was drafted because it was believed to be in accord with the weight of authority. The section reads: "Where a promise in reasonable restraint of trade in a bargain has added to it a promise in unreasonable restraint, the former promise is enforceable unless the entire agreement is part of a plan to obtain a monopoly; but if full performance of a promise indivisible in terms would involve unreasonable restraint, the promise is illegal and is not enforceable even for so much of the performance as would be a reasonable restraint."

In commenting on this section, Corbin says:

"There is no objection to the first clause herein, bearing in mind that no restraint should ever be described as 'reasonable' if it is 'part of a plan to obtain a monopoly.' But the cases that are in conflict with the second clause are the ones to be followed. See the notes by Professor Samuel Williston and the present writer in 23 Conn.Bar Jour. 40, 43.

"Professor Samuel Williston, who drafted Section 518 for the Institute, now agrees with this. In a note on Beit v. Beit, 1948, 135 Conn. 195, 63 A.2d 161, 10 A.L.R.2d 734, 23 Conn.Bar Jour. 40, he says: 'I have concluded and have so stated in Section 1660 of the Revised edition of my treatise on Contracts in spite of the contrary rule stated in Section 518 of the Restatement of Contracts, that in such a case the unquestionably legal part of this covenant should be enforced. * * * If any part of the covenant promised anything criminal or seriously bad in itself the whole covenant, whether in divisible form or not, should be unenforceable. But this is not the case.' "

See, also Hill v. Central West Public Service Co., 5 Cir., 1930, 37 F.2d 451; Edwards v. Mullin, 220 Cal. 379, 30 P.2d 997; Metropolitan Ice Co. v. Ducas, 291 Mass. 403, 196 N.E. 856; Fleckenstein Bros. Co. v. Fleckenstein, 76 N.J.L. 613, 71 A. 265, 24 L.R.A., N.S., 913.

Thus, it will be seen that two of the leading authorities on the law of contracts have concluded that the current trend of opinion in this country favors enforcement by the courts of the unquestionably legal parts of a covenant of the nature of the one at bar.

■ As stated in 17 C.J.S., Contracts, § 244: "Generally, an agreement imposing a restraint reasonably limited in space is not against public policy, although unlimited in time of operation, regardless of the nature of the business or occupation restrained."

■ In the case at bar the restraint imposed upon the seller of the business did not directly affect the competitive position of the public, because the buyers took over where the seller left off. The buyers had not been in the business before they made their purchase. "An agreement in restraint of trade is reasonable if, on consideration of the subject matter, the nature of the business, the situation of the parties and the circumstances of the particular case, the restriction is such only as to afford fair protection to the interests of the covenantee and not so large as to interfere with the public interests or impose undue hardship on the party restricted." 17 C.J.S., Contracts, § 247.

■ Concluding as we have that the manifest intention of the parties was to effect a sale of the business as a going concern and as an established business, we conclude that the ruling of the chancellor was a just and practicable exercise of his powers in advancing that intention however awkwardly it was expressed in the written memoranda of the parties.

Mr. Ceresia pleads that other provisions of the contract such as those requiring him to remodel the large cold storage room in the building leased to the Mitchells, "to install a hot water radiator and furnish coal, etc.," would have cost him more than the total amount of the rental for a period of five years, and the cost of his fulfilling these provisions would be so great that it would be unconscionable to even consider enforcing them. He insists that the provisions of the contract of sale and lease are not severable, that he has instituted an action in the Muhlenberg Circuit Court to oust the Mitchells from the premises. He states that he renounced the whole transaction in September, 1947, that the Mitchells acquiesced in his renunciation and agreed to vacate the leased premises as soon as they could obtain another building and that they have not paid him any rent since June, 1949.

■ It is important to note that the Mitchells are not insisting upon the fulfillment of these provisions that Mr. Ceresia insists make the whole agreement unconscionable. So far as the record before us reveals, the Mitchells are still occupying the leased premises. As we have commented heretofore, the writings involved are ineptly drawn, yet they clearly disclose the intention to transfer the business together with its good will as well as to lease the building where Mr. Ceresia had conducted the business. So long as the Mitchells do not invoke these provisions about which Mr. Ceresia complains we are not disposed to consider them, since we have concluded that the intention of the parties was to transfer a going business along with the good will. That being our view of the transaction, and no fraud or overreaching being apparent, we have approved the chancellor's ruling, supported as it is by the trend of modern authority, in order to effectuate the manifest intention of the parties. For us to grant Mr. Ceresia the relief he prays in the circumstances of this case would work an injustice on the Mitchells.

The judgment is affirmed.

CAMMACK, C. J., and MOREMEN, J., dissenting.

MOREMEN, Justice (dissenting).

The majority opinion is, we believe, an adventure beyond the field in which we have heretofore expressed the power to reform a contract.

It has been a common thing for courts of equity to reform contracts in order to express the true intent of the parties, but we have done this only when proof was clear and convincing that by mutual mistake of the parties or by fraud on the part of one party and mistake on the part of the other party the instrument of agreement did not express the true agreement between them.

Courts have also construed instruments in the form of deeds to be, in fact, mortgages, where the conduct of the parties clearly demonstrates that they intended it to be a mortgage. But these things have been done under the power of reformation, and only upon proper pleading and proof,

and where a party sought to reform the instrument, and then enforce it according to its terms, after reformation.

We have also in cases where a severable contract contained both valid and invalid provisions, cast out the evil clauses and then enforced the good provisions, if the action did not do violence to the contract's mutuality. In these cases the illegal provisions were disregarded, and only the legal provisions enforced.

A converse state of fact is presented here. We were not requested to cast out the wicked and enforce the good. We were asked to enforce the illegal portion of the contract itself by means of injunctive power, and we have enforced it after we have whittled it down to conform to our notions of decency. All of this without pleading or proof, and without (it seems to us) a basis of sound legal practice. See Johnson v. McMillion, 178 Ky. 707, 199 S.W. 1070, L.R.A. 1918C, 244.

CAMMACK, C. J., concurs in this dissent.