BIEVER, DREES & NORDELL, a partnership, Plaintiff and Appellee,

v.

William C. COUTTS, Defendant and Appellant.

Civ. No. 9910.

Supreme Court of North Dakota.

April 23, 1981.

Shaft, McConn, Fisher & Thune, Grand Forks, for plaintiff and appellee; argued by Robert L. McConn, Grand Forks.

Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for defendant and appellant; argued by Robert Vaaler, Grand Forks.

VANDE WALLE, Justice.

William C. Coutts appeals from a judgment entered by the district court of Grand Forks County restraining him from performing any audit or other accounting or bookkeeping services of any kind and from accepting any compensation or other monetary reward for such services from certain clients of Biever, Drees & Nordell (hereinafter "firm") through December 31, 1981. We affirm.

Coutts was employed as an accountant with the firm for several years prior to his voluntary termination of employment in June 1979. Coutts and the members of the firm are certified public accountants. During his employment with the firm Coutts conducted periodic audits of certain Minnesota school districts. In April 1979 Coutts addressed a letter to the Warren School District, one of the school districts for which he had performed audits for the firm, indicating that he, as an individual, was interested in performing the audit for the year ending June 10, 1979. In the letter Coutts indicated that his qualifications included the fact that he "worked on the audit of your district in 1975, 1976, 1977, and 1978. . . . and in 1978 I was in charge of all phases of the audit." Prior to writing the letter, Coutts spoke to Mr. Hanson, the superintendent of the school district, and told him he was thinking of leaving his employment. Coutts asked Hanson if he would be interested in considering him for the future audits of the school district. Hanson replied that he did not have anything to say about the matter but if Coutts would write him a letter stating his qualifi-

cations, he would submit it to the school board. Similar contacts were made with the other school districts involved. At the time of making these contacts with the school districts Coutts had not informed the firm that he was contemplating leaving the employ of the firm and establishing his own business nor did he inform the firm that he had contacted the school districts with regard to his employment for their audits. Coutts had no written contract of employment with the firm nor were there any oral agreements as to the length of time Coutts would remain employed with the firm. After Coutts left the firm in June of 1979, the firm started an action to enjoin Coutts from performing any further accounting or similar services for any former clients of the firm whose business was solicited by Coutts while he was employed by the firm. In addition, the complaint sought a judgment against Coutts in an amount equal to all fees for accounting and similar services performed by Coutts for former clients of the firm whose business was solicited by Coutts while he was employed by the firm.[1] Subsequent to the filing of the complaint but prior to the trial, i. e., in October 1979, the partnership merged into an existing professional corporation and Drees and Nordell became members of that corporation. The partnership continues to exist but only for the purpose of collecting accounts receivable. After a hearing before the district court the court enjoined Coutts "from performing any audit or other accounting or bookkeeping services of any kind for, and is restrained from accepting any compensation or other monetary reward either directly or indirectly for such services . . ." from the school districts through December 31, 1981. This appeal followed.

Coutts attacks the injunction issued by the district court on several grounds. His

---

1. In a pretrial order the district court determined that the matter of damages should be severed from the issue of an injunction. In its order granting the injunction the district court also determined that the injunction constituted the final disposition by the court of the firm's claim for injunctive relief and certified, pursuant to Rule 54(b), N.D.R.Civ.P., that although

other issues remained undetermined there was no just reason for delay in the entry of the injunction. Unless such a determination is made, a judgment which adjudicates less than all the issues is a partial judgment and is not appealable. See, e. g., *Boone v. Estate of Nelson*, 264 N.W.2d 881 (N.D.1978).

first argument is that there is no basis for granting injunctive relief under North Dakota law. The statutes governing the granting of an injunction list exclusive and specific instances in which an injunction may be granted by the trial court and he urges us to conclude that the facts of this case do not fall within one of those specific instances.

Section 32–05–01, N.D.C.C., provides that preventive relief "may be given in the cases specified in this chapter and in no other cases." Section 32–05–04 provides, in part:

> "Except when otherwise provided by this chapter, a final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant:
>
> "1.  . . .
>
> "2.  . . .
>
> "3.  . . .
>
> "4.  When the obligation arises from a trust."

The district court determined that the term "trust," as used in subsection 4 of the statute, is not limited to a formal trust but rather that a contract between parties "may result in a trust relationship between them from which an enjoinable obligation may arise." [2] Coutts argues that the term "trust," as used in Section 32–05–04(4), means a trust obligation such as is defined in Chapter 59–01, N.D.C.C., governing express and implied trusts. Section 59–01–06(2), N.D.C.C., provides:

> "2.  One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it; . . ."

We do not find it necessary to determine whether the word "trust," as used in Section 32–05–04, N.D.C.C., refers to trust as defined in Section 59–01–06(2), N.D.C.C., or whether the term has the meaning ascribed

to it by the trial court. Coutts argues that there was no contract between himself and the firm upon which the trial court could impose such a requirement. One of the members of the firm testified there was no obligation existing between Coutts and the firm. But at the time Coutts contacted the school districts he was employed by the firm. There may have been no written contract between Coutts and the firm but it is apparent that Coutts agreed to perform services for the firm and that the firm, in turn, agreed to pay Coutts for his services as an employee, if only on a month-to-month basis. If we refer to the provision of Section 59–01–06(2), N.D.C.C., an implied trust is created if Coutts gained something by "the violation of a trust, or other wrongful act, . . ." The issue thus becomes: Did Coutts owe any obligation to the firm not to solicit its clients while he was employed by the firm and did he, in violation of that obligation, attempt to gain something, i. e., the clients of the firm? If Coutts did owe such an obligation and if he did violate that obligation, the fact he terminated his employment does not erase that obligation nor prevent the court from enforcing the duty owed to the firm.

In determining whether or not Coutts owed the firm an obligation not to solicit its clients for himself while he was a member of the firm, we take particular notice of the fact that he was a certified public accountant working for a firm of certified public accountants. Coutts was certified by the State of North Dakota. See Chapter 43–02.1, N.D.C.C. As a certified public accountant Coutts was obligated to follow the statutes and regulations of the State Board of Public Accountancy. Section 43–02.1–02(6)(d) gives the board the power to establish rules and regulations to "maintain a high standard of integrity, continuing education, and proficiency among the holders of certified public accountant certificates . . ." Section 43–02.1–02(6)(e) gives the

---

2.  In applying the term "trust" the trial court adopted the following definition:

> "trust *n.*  . . . assured reliance on some person or thing: a confident dependence on the character, ability, strength, or truth of someone or something: . . ." Webster's Third New International Dictionary, Unabridged (1976 ed.), p. 2456.

board the power to "prescribe and enforce a code of professional ethics." The board has adopted rules and regulations and a code of professional ethics. They are published, as required by statute, in the North Dakota Administrative Code. Section 3–04–05–01 of that Code involves the issue with which we are concerned and provides, in part:

"An accountant shall not endeavor to provide a person or entity with a professional service that is currently provided by another public accountant except:

"1. An accountant may respond to a request for a proposal to render services and may furnish services to those who request it [sic]. However, if an audit client or another independent public accountant requests an accountant to provide professional advice on accounting or auditing matters in connection with an expression of opinion on financial statements, the accountant must first consult with the other accountant to ascertain that the accountant is aware of all the available relevant facts.

.     .     .     .     .

"An accountant who receives an engagement for services by referral from another public accountant shall not accept the client's request to extend the accountant's services beyond the specific engagement without first notifying the referring accountant, nor shall the accountant seek to obtain any additional engagement from the client."

■ We believe the above provision clearly sets forth what the firm had a right to expect from Coutts, i. e., that he would not solicit clients of the firm for himself while he was employed by the firm. Although Coutts was actually performing the services for the school districts he was doing so as an employee of the firm. The school districts originally sought the services of the firm, not Coutts, and it was by assignment of the partners of the firm that Coutts performed the services for the school districts. Under the code of professional ethics which Coutts was obliged to follow as a certified public accountant, the firm had a

right to expect that Coutts, during the time he was an employee, would not solicit the business of the firm's clients for himself at a later date when he no longer was employed by the firm but had established his own business. Coutts, in turn, owed an obligation to the firm not to do so.

The trial court relied upon the decision of the Minnesota Supreme Court in *Sanitary Farm Dairies, Inc. v. Wolf*, 261 Minn. 166, 112 N.W.2d 42 (1961), in which that court held, in the syllabus by the court:

"1. Absent a restrictive covenant, and subject to equitable protection against unfair competition, after terminating his employment a driver-salesman may not be enjoined by his employer from soliciting the patronage of former customers on a milk route if he has enhanced the goodwill of the business or added new customers.

"2. If a driver-salesman on a milk route, while still an employee, has solicited customers in contemplation of commencing his own business, his employer is entitled to enjoin him from further soliciting or selling to such customers for a sufficient length of time to permit the employer to compete on even terms."

Coutts attempts to distinguish the Minnesota decision on the ground it involved a question of unfair competition. We believe that distinction is without merit because the facts are essentially the same, i. e., that an employee, without the knowledge of his employer, attempts to secure for himself the business of clients assigned to him by the employer. This result is clearly indicated by the opinion of the Minnesota court wherein it states:

"Defendants claim that the action taken by defendant Wolf was merely in preparation for a change in employment and was legally permissible. While it is true that an employee may take steps to insure continuity in his livelihood in anticipation of resigning his position, he cannot feather his own nest at the expense of his employer while he is still on the payroll. [Citation omitted.] Clearly an employee is not advancing the inter-

ests of his employer when he suggests that customers can do as well or better by discontinuing their present patronage and transferring their business elsewhere in the immediate future." 112 N.W.2d at 48–49.

■ We conclude that whether the definition of the term "trust," as used in Section 32–05–04, N.D.C.C., is that applied by the trial court or that urged by Coutts, there is an adequate basis under the facts and law as discussed above to warrant an injunction by the trial court.

■ Coutts also attacks the factual basis for the trial court's ruling. He argues that he contacted the superintendents of the school districts involved, not the school boards, and that it is the school boards that make the final determination as to the accountant who will audit the school districts. This argument ignores reality in that the superintendent is the administrative officer of school districts, the full-time employee of a part-time governing body. The superintendent's recommendation to the board is generally adopted by the school board. In making the contact with the school superintendent, Coutts effectively solicited the business of the school district even though the school board must technically approve that employment.

■ Coutts takes issue with the granting of the injunction to the firm which is in the process of dissolving and exists only for the purpose of collecting accounts receivable. This matter was considered by the trial court in its memorandum decision as follows:

"It is the opinion of this Court that under a full consideration of the testimony of this case it would be inequitable to say that the successor firm to the named plaintiff accounting firm has no standing to seek redress or injunction against the defendant for what he did. If defendant's contention in this respect were upheld the mere fact of a subsequent and unrelated change of professional organization occasioned by the retirement of the senior partner Mr. Biever would insulate the defendant from any adverse judgment for his wrong doing. In addition it appears clear from the evidence in this case that over the long years of auditing done by the plaintiff firm and its predecessor firms that there was a continuity of auditing services in which one or more of the prior certified public accountants continued on in the successor firm. That fact appears to also apply to the successor firm to the named plaintiff. In addition it appears that the particular successor firm has continued to service most of the customers of the named plaintiff. It therefore appears to this Court that the named plaintiff has standing to sue in the capacity of the firm which has merged its operational aspects into this successor firm and is seeking to recover and distribute for the benefit of the prior partnership members the redress that it would have been entitled to had it continued to operate until the present time under its former style."

We agree with the observations of the trial court. In this instance one partner, i. e., Biever, retired. Drees and Nordell formed a professional corporation for the practice of accounting. That form of business operation is permitted for accountants under Section 43–02.1–08, N.D.C.C., and Chapter 10–31, N.D.C.C. A reading of the provisions of Chapter 10–31, governing professional corporations, immediately reveals that such a corporation is merely a form of doing business for persons who render personal service to the public which requires a license as a condition precedent to rendering such service. Thus Section 10–31–09, N.D.C.C., provides, in part:

"This chapter does not modify any law applicable to the relationship between a person furnishing professional service and a person receiving such service, including liability arising out of such professional service, and including the confidential relationship between the person rendering the professional service and the person receiving such professional service, if any, and all confidential relationships previously enjoyed under the laws of this state or hereinafter enacted shall remain inviolate . . . ."

It is apparent that the corporation includes the same business entity, minus Biever, as the plaintiff firm. The trial court found that the corporation continued to service most of the customers of the firm. There can be little doubt that the injunction inures to benefit the corporation rather than the firm. Merely because Coutts was employed by the firm and had left before the change in the form of business operation to a professional corporation is not significant. Although Coutts never was employed by the business as a corporation, the corporation, of which Drees and Nordell are professional members, is the successor in interest to the firm. Coutts may not avoid his responsibility to Drees and Nordell simply because of a change in the business status under which they operate.

Finally, Coutts urges that we recognize that although the injunction applies only through December 31, 1981, it will effectively cause him to lose this business permanently. His argument is that because he will not be able to accept employment by the school districts for the 1981 audit the school districts will employ other accountants and, having once employed them, will continue to do so for succeeding years. There is testimony in the record which indicates that this is the pattern in many instances. It does not, however, follow that it will necessarily be the result in this instance. The school districts were clients of the firm for several years. They were apparently considering employing Coutts's services individually rather than as a member of the firm. Thus it is apparent from the very facts of this case that the school districts may, in the future, select Coutts or someone other than the firm to perform the auditing services.

As Coutts has conceded in his brief, the granting of a temporary injunction rests within the sound discretion of the trial court, and its ruling will not be reversed on appeal unless that court has abused its discretion. See, e. g., *Associated General Contractors v. Local No. 580,* 278 N.W.2d 393 (N.D.1979). We conclude there was no abuse of discretion on the part of the trial court in granting this injunction.

The judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.