**SPECTRUM EMERGENCY CARE, INC., a Missouri Corporation, Plaintiff and Appellant,**

v.

**ST. JOSEPH'S HOSPITAL AND HEALTH CENTER, f/k/a St. Joseph's Hospital, and Robert L. Cusic, M.D., Sheldon Swenson, M.D., Defendants and Appellees.**

**Civ. No. 910030.**

Supreme Court of North Dakota.

Jan. 14, 1992.

---

Pringle & Herigstad, PC, Minot, for plaintiff and appellant; argued by Carol K. Larson.

Howe, Hardy, Galloway & Maus, PC, Dickinson, for defendant and appellee St. Joseph's Hosp. and Health Center, f/k/a St. Joseph's Hosp.; argued by Michael J. Maus.

Anderson & Anderson, Bismarck, for defendants and appellees Robert L. Cusic, M.D., and Sheldon Swenson, M.D.; argued by Sonna M. Anderson.

ERICKSTAD, Chief Justice, on reassignment.

Spectrum Emergency Care, Inc., (Spectrum) appeals from a judgment of the District Court for Stark County which held that the restrictive covenants of its contracts with St. Joseph's Hospital and Health Center (Hospital) and certain physicians were void under section 9–08–06, N.D.C.C. We affirm.

Spectrum supplies emergency room physicians to hospitals to provide emergency medical care. Since 1979 and until January 1, 1990, Spectrum had a contract with the Hospital to provide emergency room physicians. Originally, the contract was for weekend emergency room coverage; however, sometime during 1986 the contract was modified so that full-time emergency coverage was provided by Spectrum. The agreement between Spectrum and the Hospital was self-renewing and provided for a 90–day notice period prior to termination. This agreement contained the following clause:

"During the term of this Agreement, any renewals or extensions thereof, and for a period of one year (12 months) thereafter, Hospital agrees it will not directly or indirectly enter into any agreement covering the same or similar services as are provided for herein with any person with whom it came into a business or

professional relationship as a result of this Agreement."

Spectrum also had separate Independent Contractor Physician Agreements with Robert L. Cusic, M.D., Sheldon Swenson, M.D., and Paul Swisher, M.D.[1] These agreements stated:

"8. Corporation and Physician recognize that during Physician's association with Corporation, Physician has been and will continue to be brought into contact with Corporation's confidential methods of operation and trade secrets, including know-how, data and other information about Corporation's operations and business of a confidential nature; that such information gives to the relationship a special and unique value. Therefore, Physician agrees that during the term of this contractual relationship with Corporation and for a period of one (1) year thereafter, Physician will not in any manner, directly or indirectly: (a) disclose or divulge to any person, entity, firm or company whatsoever, or use for his own benefit or the benefit of any other person, entity, firm or company, directly or indirectly in competition with Corporation any knowledge, information, business methods, techniques or data of Corporation; (b) solicit, divert, take away or interfere with any of the accounts, trade, business patronage, employees or contractual arrangements of Corporation; (c) compete with Corporation at Hospital or enter into any contractual arrangements for the provision of emergency department physician coverage with any hospital where Physician has been scheduled by Corporation. As used herein, the term 'Corporation' shall include Spectrum Emergency Care, Inc. and its affiliates.

"Notwithstanding the above, if the agreement between Corporation and Hospital is terminated through no fault of Physician's, and through no direct or indirect negotiation with Hospital Board, Administration, or Medical Staff, then the terms and provisions of this paragraph '8' shall be null and void.

"Physician shall, upon termination of the contractual relationship between Physician and Corporation, return to Corporation all books, records and notes and all other information and documents applicable to Corporation, its accounts and the manner of conducting its business.

"It is the intention of the parties to restrict the activities of the Physician only to the extent necessary for the protection of the legitimate business interests of Corporation and nothing herein shall be such as to prevent Physician from earning a livelihood."

In order to fulfill its contract with the Hospital, Spectrum entered Employment Agreements with Robert L. Cusic to serve as Medical Director, and Sheldon Swenson to serve as Assistant Medical Director at the Hospital. These agreements did not vary in any significant manner from the previously quoted agreements.

The undisputed facts are that on September 2, 1989, physicians Cusic and Swenson met with the CEO of the Hospital, John Studsrud. During this meeting, they informed Studsrud that they would not renew their contracts with Spectrum as they were unhappy with Spectrum and were seeking other employment. On September 11, 1989, these persons held another meeting at which a change in format of the emergency room was discussed. On September 13, 1989, the Hospital notified Spectrum that it would not renew its contract with Spectrum. Cusic and Swenson negotiated and signed new employment agreements with the Hospital prior to the termination of their agreements with Spectrum. The new agreements between the Hospital and the physicians were to take effect at the end of the Spectrum contracts and were to be effective for four years.

Spectrum claims that the Hospital, Cusic, and Swenson breached their agreements with it when they entered into new agreements while still under contract with it. Spectrum's complaint asserted that the

---

1. Summary judgment of dismissal of the complaint was granted as to Dr. Paul Swisher by consent of counsel. He was dismissed from this action on December 17, 1990.

physicians and the Hospital violated their respective agreements with it by making agreements with each other. Spectrum requested injunctive relief and monetary damages.

■ Spectrum apparently concedes that the provision for a one-year restriction on the physicians' activities after the termination of the contract is not valid. However, Spectrum asserts the interim restraint in the contracts is valid and binding upon both the Hospital and the physicians.

Although the trial court determined that neither the physicians nor the Hospital breached any of their respective contractual obligations to Spectrum, we, for purposes of this opinion, assume that a technical breach occurred. We, nevertheless, affirm the judgment for the reasons hereinafter explained.

The physicians and the Hospital rely on section 9–08–06 of the North Dakota Century Code to defend their actions. It reads: "Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind *is to that extent void....* [Emphasis added.]" Thus, our inquiry must focus on what specific actions the defendants have engaged in and whether or not such conduct is protected under the statute.

As previously stated, on September 2, 1989, the physicians informed the Hospital of their intention of leaving the Spectrum program. This precipitated negotiations between the physicians and the Hospital for employment contracts, with employment by the Hospital of the physicians to begin at the end of the Spectrum contracts. In this sense, the parties were preparing for the time when they would no longer be under contract with Spectrum.

■ First, we consider whether or not section 9–08–06, N.D.C.C., protects the actions of the physicians. There can be no doubt that section 9–08–06, N.D.C.C., makes void the provision which attempts to prohibit the physicians from being em-

ployed by the Hospital at the end of the contract period with Spectrum. Spectrum concedes this point. Thus, the issue narrows to whether or not section 9–08–06, N.D.C.C., protects a person's ability to negotiate and contract for future employment while under a contract which attempts to prohibit such conduct. We conclude that it provides such protection. The ability to negotiate and contract for future employment is central to one's ability to exercise a lawful profession, trade, or business.

We note that there was no evidence that the physicians engaged in conduct prohibited by their contract other than that which was necessary in seeking prospective employment. The trial court as a matter of fact found that "there was no evidence that the Hospital solicited or encouraged Drs. Cusic and Swenson to decide not to renew their agreement with Spectrum, and there was no evidence that the physicians solicited or encouraged the Hospital to decide not to renew its agreement with Spectrum." That finding is interesting, but it is not crucial to our disposition of this case. It is important to note that Spectrum was notified of the parties' intentions and given the opportunity to try to change the minds of the physicians and the Hospital CEO in a meeting which took place in early November, approximately one month before the physicians signed the contract with the Hospital.

Spectrum erroneously relies upon *Igoe v. Atlas Ready–Mix, Inc.*, 134 N.W.2d 511 (N.D.1965), and *Hawkins Chemical, Inc. v. McNea*, 321 N.W.2d 918 (N.D.1982). Both of these cases involve sales of businesses. These decisions are distinguishable as they involve restrictions imposed on one who had sold a business and thus are decided under the exceptions contained under section 9–08–06, N.D.C.C., rather than the part of that section which makes contracts which restrain a lawful profession void. The conduct herein attempted to be restrained does not come within the exceptions.[2]

2. *"9–08–06. In restraint of business void— Exceptions.* Every contract by which anyone is restrained from exercising a lawful profes-

sion, trade, or business of any kind is to that extent void, except:

Spectrum places great reliance on our ruling in *Biever, Drees & Nordell v. Coutts*, 305 N.W.2d 33 (N.D.1981). In *Coutts*, we upheld a temporary injunction restraining the defendant from performing accounting services for certain clients of his former employer when the defendant had solicited his former employer's clients while still employed by them in contemplation of leaving and starting his own business. *Coutts* is distinguishable even without considering section 9–08–06, N.D.C.C.

Initially, we note that *Coutts* did not involve a restrictive covenant and the application of section 9–08–06, N.D.C.C.[3] *Coutts* is more properly characterized as involving equitable protection against unfair competition. In *Coutts*, the conduct in question went well beyond that which is central or necessary to one's ability to exercise a profession, trade, or business. In *Coutts*, the employee, without the knowledge of his employer, solicited for himself *the business* of his employer's clients. In this case, Spectrum was made aware of the parties' intent not to renew their respective contracts months in advance of the end of their contracts, and in fact, Spectrum made an effort to have the physicians reconsider their decisions. Thus, unlike the plaintiff in *Coutts*, Spectrum was not placed on unequal footing, nor unfairly disadvantaged. In this case, the physicians did not negotiate or contract to be the "equivalent" of Spectrum. They merely contracted to engage in their "lawful profession."

In fact, in *Coutts* our Court relied on *Sanitary Farm Dairies, Inc. v. Wolf*, 261 Minn. 166, 112 N.W.2d 42 (1961), a decision of the Minnesota Supreme Court. There is no indication in *Sanitary Farm Dairies* that Minnesota had a statute equivalent to section 9–08–06, N.D.C.C.; at least there is no reference to such a statute in *Sanitary Farm Dairies*. Our limited research does not indicate that there is such a statute in Minnesota today or that there was one when *Sanitary Farm Dairies* was decided. As *Sanitary Farm Dairies* does not involve the issue of the application of a statute equivalent to section 9–08–06, N.D.C.C., that opinion is of little aid to us in this case. Therefore, *Coutts* cannot be controlling in this case.

We thus conclude that the contracts between the physicians and Spectrum to the extent they restrain the physicians from negotiating for and securing future employment, are void under section 9–08–06, N.D.C.C.

Next we consider whether or not section 9–08–06, N.D.C.C., protects the actions of the Hospital. Spectrum cites *Dickinson County Memorial Hospital v. Northern Professional Emergency Physicians*, 141 Mich.App. 552, 367 N.W.2d 833 (1984), for the proposition that a statute similar to section 9–08–06, N.D.C.C., is not applicable to restrictive covenants which restrain one as an employer as distinguished from an employee. We do not agree that there should be any distinction.

Initially, we note that to enforce the contract's restrictions against the Hospital would permit Spectrum to accomplish indirectly what it would be illegal to do directly. Statutes should not be interpreted to allow persons to do indirectly something that the statute directly prohibits. *See Resolution Trust v. Dickinson Econo-Storage*, 474 N.W.2d 50, 52 (N.D.1991).

The policies of restraint against contracts which restrict the free exercise of a lawful profession or business behind section 9–08–06, N.D.C.C., would be frustrated by such an interpretation.

1. One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part of either, so long as the buyer or any person deriving title to the goodwill from him carries on a like business therein.

2. Partners, upon or in anticipation of a dissolution of the partnership, may agree that all or any number of them will not carry on a similar business within the same city where the partnership business has been transacted, or within a specified part thereof."

3. In *Coutts*, neither of the parties raised section 9–08–06, N.D.C.C., as an issue in their briefs, it was not discussed in our opinion and it was not raised in the petition for rehearing. Under such circumstances, *Coutts* cannot be said to be controlling in this case.

Statutes must be interpreted in furtherance of their purposes. *See Aanenson v. Bastien,* 438 N.W.2d 151, 153 (N.D. 1989); *Larson v. Wells County Water Resource Board,* 385 N.W.2d 480 (N.D.1986). Parties to a contract cannot waive rights which are protected by statutes that promote public policies. *See Borsheim v. Owan,* 467 N.W.2d 95, 98 (N.D.1991). (Vendees under anti-deficiency statutes could not waive their procedural rights because it would be against the public policy advanced by the statute.)[4] Thus, we conclude that section 9–08–06, N.D.C.C., contemplates prohibiting restraints on a person's exercise of a lawful profession, trade, or business as an employer as well as an employee.

The issue is whether or not the Hospital's actions were protected under section 9–08–06, N.D.C.C. As noted earlier, there was no evidence that the Hospital did any more than negotiate with prospective employees and thereafter reach employment agreements to be effective at the end of the contract with Spectrum. There was no evidence that the Hospital and Spectrum were on unequal footing. There was no evidence that the Hospital would be acquiring any "trade secret" of Spectrum's or any other such advantage.[5] As with the case of the physicians, the attempted restraint against the Hospital does not come within any exception of section 9–08–06, N.D.C.C. We thus conclude that, to the extent the contract between the Hospital and Spectrum restrains the action taken by the Hospital in this case, it is void.

For the aforementioned reasons, the judgment of the district court is affirmed.

HEEN, Surrogate Justice, and PEDERSON, Surrogate Justice, sitting in place of LEVINE and MESCHKE, JJ., disqualified.

Justice H.F. GIERKE, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.

VANDE WALLE, Justice, concurring specially.

The trial court found "there was no evidence that the Hospital solicited or encouraged Drs. Cusic and Swenson to decide not to renew their agreement with Spectrum, and there was no evidence that the physicians solicited or encouraged the Hospital to decide not to renew its agreement with Spectrum." Notwithstanding the majority's dismissal of that finding as "interesting, but ... not crucial to our disposition of this case," that finding is the basis upon which I concur in the result reached by the majority opinion.

I am concerned that the majority opinion may be construed to hold that section 9–08–06, NDCC, absolves employees of any loyalty to their employer. There are other provisions which are of equal import in the employer-employee relationship. Chapter 34–02, NDCC, sets forth the obligations of employer and employee. Employers assume certain obligations as a result of the relationship. So do employees. For example, section 34–02–07 requires that one who is employed at his own request to do that which is more for his own advantage than for that of his employer must use great care and diligence to protect the interests of the employer; and section 34–02–14 requires that an employee who has any business to transact on his own account similar to that entrusted to him by his employer must always give the employer the preference. I construe those sections to require loyalty to the employer and to require that the employee not impair the employer's business for the benefit of the employee.

**4.** *See Szabo Food Service, Inc. v. Cook County,* 160 Ill.App.3d 845, 112 Ill.Dec. 266, 513 N.E.2d 875 (1 Dist.1987). A restrictive covenant will only be enforced if its impact on the public is reasonable. *Id.* 112 Ill.Dec. at 268, 513 N.E.2d at 877.

**5.** *See Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d 657 (Tex.Civ.App.1975). Case involved no statute but refused to enforce a restrictive covenant between doctors and a placement corporation which protected no interests and would only serve to prevent competition and was, therefore, not reasonable. *Id.* at 663.

I agree that this court's decision in *Biever, Drees & Nordell v. Coutts*, 305 N.W.2d 33 (N.D.1981) is distinguishable, not because section 9–08–06 was not discussed in that opinion as footnote 3 of the majority appears to hold,[1] but because the facts and the issue framed from those facts was substantially different than that with which we are here faced. As the majority opinion notes *Coutts* was a case "involving equitable protection against unfair competition." Thus, in *Coutts*, we framed the issue as "Did Coutts owe any obligation to the firm not to solicit its clients while he was employed by the firm and did he, in violation of that obligation, attempt to gain something, i.e., the clients of the firm?" *Coutts, supra*, at 35. Relying in part on section 3–04–05–01[2] of the North Dakota Administrative Code, the accountants Code of Professional Ethics, we concluded that the accounting firm "had a right to expect that [Coutts] would not solicit clients of the firm for himself while he was employed by the firm." *Coutts, supra*, at 36.

Here the trial court found there was no solicitation to not renew the contract with Spectrum by either the physicians or the hospital and no contract negotiations between the hospital and the physicians until after the physicians determined to leave Spectrum's employment at the end of their contract period.

Insofar as the contract prohibits negotiations for future employment after the physicians determined not to renew the contract, I agree it violates section 9–08–06, NDCC. We need not and should not decide any issues other than those found by the findings of the trial court.

---

1. I do not believe the lack of reference to a given statute or judicial decision in an opinion requires a conclusion that such an opinion lacks precedent in a future case in which such a statute or decision is raised or discussed. To conclude otherwise makes judicial precedent unduly fragile.

2. Chapter 3–04–05, North Dakota Administrative Code, was repealed effective November 1, 1982.